IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Lavar Sanders, # 259354, ) | |
| ) | |
| ) | Civil Action No. 6:15-492-RMG-KFM |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Joseph McFadden, ) | |
| ) | |
| ) | |
| Respondent. ) | |
| ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

## **BACKGROUND**

The petitioner is currently incarcerated at the Lieber Correctional Institution in the South Carolina Department of Corrections ("SCDC"). The petitioner was indicted by the Sumter County Grand Jury in October 2006 for trafficking in cocaine and possession of cocaine with intent to distribute within proximity of a public park (app. 264–65). Arthur H. Wilder, Jr., represented the petitioner on the charges. A jury trial was held March 4–5, 2009, before the Honorable R. Ferrell Cothran, South Carolina Circuit Judge. The jury convicted the petitioner as charged (app. 191–92). The court sentenced the petitioner to twenty-five years for trafficking and to eight years on the proximity charge (app. 198–99). On September 24, 2009, counsel argued his post-trial motions on prior rulings and

challenged the constitutionality of the trafficking statute (app. 204–05). Judge Cothran denied the motions at the conclusion of the hearing (app. 209). The petitioner appealed.[1]

### *Underlying Case Facts*

The evidence at trial showed that officers from the Sumter Police Department approached an apartment building in Sumter at the report of shots being fired. Officer Kirby testified that, as he approached, he saw two men who began to walk away in different directions. Officer Kirby testified that he saw the petitioner drop something from his pocket as he walked away. Officer Kirby later recovered the package and suspected that it contained cocaine (app. 77–81). A digital scale was found on the petitioner (app. 113). Subsequently, the substance that Officer Kirby recovered was tested by a forensic chemist with the South Carolina Law Enforcement Division ("SLED") and found to be 10.38 grams of cocaine (app. 53–54, 125). Officer Kirby testified that the area where the petitioner was found and arrested was within half a mile of a public park (app. 83).

### *Direct Appeal*

The petitioner timely sought a direct appeal of his conviction and sentence. Robert M. Pachak of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented the petitioner on appeal and presented the following issue:

> Whether the trial court erred in giving a jury charge on a statutory inference without telling the jury that they could reject the inference?

(App. 213; doc. 19-3, final br. of appellant).

The State filed its final brief in response on September 24, 2010 (doc. 19-4, final br. of respondent). The South Carolina Court of Appeals issued an unpublished opinion on May 17, 2011, affirming the convictions. *State v. Lavar Patrick Sanders*,

---

[1] Both the petitioner and trial counsel filed a Notice of Appeal. The petitioner's *pro se* notice of appeal was dismissed for failure to provide proof of service (doc. 19-2, order of dismissal). This did not affect the Notice of Appeal filed and properly served by counsel.

Unpublished Opinion No. 2011-UP-217 (S.C.Ct.App. May 17, 2011) (doc. 19-5). The petitioner did not seek rehearing or further review by the Supreme Court of South Carolina. The South Carolina Court of Appeals issued the remittitur on June 2, 2011 (doc. 19-6).

*PCR*

The petitioner filed a *pro se* post–conviction relief ("PCR") application on January 30, 2012, wherein he alleged the following claims:

> 1. Ineffective Assistance of Counsel: failure to investigate, failure to provide effective representation;
>
> 2. Denial Due Process: Applicant reserves the right to amend at a later date

(App. 220). The State filed its Return on June 4, 2012 (app. 225–29). Charles T. Brooks represented the petitioner in the action. An evidentiary hearing was held March 18, 2013, before the Honorable William Jeffrey Young, South Carolina Circuit Judge. At the conclusion of the hearing, Judge Young took the matter under advisement (app. 255). By order dated April 11, 2013, but filed on April 17, 2013, Judge Young denied relief and dismissed the application (app. 257–63). The petitioner appealed the denial of relief.

*PCR Appeal*

Appellate Defender Robert M. Pachak again represented the petitioner on appeal. On June 23, 2014, he filed a *Johnson* petition for writ of certiorari in the Supreme Court of South Carolina. *See Johnson v. State*, 364 S.E.2d 201, 201 (S.C. 1988) (*per curiam*) ("This Court has approved the withdrawal of counsel in meritless post-conviction appeals, provided the procedures outlined in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), were followed."), and raised the following issue:

> Whether defense counsel was ineffective for failing to investigate?

(Doc. 19-7 at 3).

Counsel also filed a petition to be relieved of appointment as "[i]n his opinion seeking certiorari from the order of dismissal [was] without merit" (doc. 19-7, *Johnson* pet. at 7). By letter dated July 24, 2013, the Clerk of the Supreme Court of South Carolina advised the petitioner of his right to file a "*pro se* response" and "raise and argue any issues [he] believe[d] the Court should consider in this appeal" (doc. 19-8). However, the petitioner did not file a *pro se* response. Subsequently, the case was transferred to the South Carolina Court of Appeals (doc. 19-9). *See* Rule 243(l) SCACR (allowing transfer of post-conviction relief appeals to the South Carolina Court of Appeals for disposition).

On January 13, 2015, the South Carolina Court of Appeals denied the petition (doc. 19-10, order) and subsequently issued the remittitur on January 29, 2015 (doc. 19-11). The remittitur from the South Carolina Court of Appeals was received and filed in the Office of the Sumter County Clerk of Court on January 30, 2015. *See* http://publicindex.sccourts.org/Sumter/PublicIndex/CaseDetails, C/A 2012-CP-43-00180 (last checked May 27, 2015).

On August 14, 2013, while the appeal from his first PCR action was pending, the petitioner filed a second PCR application and attempted to raise the following claims:

    1. Ineffective Assistance of PCR Counsel;

    2. Ineffective Assistance of Trial Counsel;

    3. Violation of Due Process.

(Doc. 19-12, 2013 PCR application at 3).

On October 17, 2013, the respondent filed a return and moved to dismiss the action as successive and untimely (doc. 19-3). The Honorable George C. James, Jr., Chief Judge for Administrative Purposes, Third Judicial Circuit, filed a conditional order of dismissal on October 25, 2013, giving the petitioner the opportunity to show cause as to why the action should not be dismissed as successive and untimely (doc. 19-14). The

petitioner filed his response in opposition on November 6, 2013 (doc. 19-15). The Honorable R. Ferrell Cothran, Jr., considered the response, together with the pleadings and records, and found the action successive and untimely. Judge Cothran denied and dismissed the application *with prejudice* by final order filed May 13, 2014 (doc 19-16). The petitioner appealed.

On June 19, 2014, the Supreme Court of South Carolina found "petitioner . . . failed to show that there is an arguable basis for asserting that the determination by the lower court was improper" and dismissed the notice (doc. 19-17). The court issued the remittitur on July 8, 2014 (doc. 19-18).

## FEDERAL PETITION

On February 3, 2015, the petitioner filed his § 2254 petition (doc. 1). On May 29, 2015, the respondent filed a motion for summary judgment (doc. 18) and a return and memorandum (doc. 19). By order filed the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion (doc. 20). After being granted an extension of time, the petitioner filed a response in opposition to the motion for summary judgment on August 3, 2015 (doc. 25).

In his federal petition, the petitioner makes the following claim:

**Ground One:** 6th Amendment violation ("Ineffective Assitant of Counsel")

**Supporting Facts:** (1) Trial Counsel was ineffective in failing to investigate; and (2) Trial counsel was ineffective for failing to file a speedy trial motion

(Doc. 1 at 5).

5

**APPLICABLE LAW AND ANALYSIS**

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non–movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non–moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non–moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc's Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Summary judgment is not "a disfavored procedural

shortcut" but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

*Exhaustion*

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. §§ 17–27–10,–90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976). If the PCR court fails to address a claim as is required by South Carolina Code § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[2] Counsel for respondent acknowledges that the petitioner has exhausted his state court remedies and has no available state court remedies at this time (doc. 19 at 7–8).

*Procedural default*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

---

[2]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

If a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he or she is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'" *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)). To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999). "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent. However, "actual innocence" requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

The petitioner presents one ground with two allegations. The first is an allegation of ineffective assistance of counsel in failing to investigate. This was raised and addressed in PCR and order of dismissal. It is ripe for review in this action. The second allegation, that counsel was ineffective in failing to move for a speedy trial, was not raised and addressed. Therefore, it is procedurally defaulted. The petitioner alleges PCR counsel

8

was ineffective in presenting the issues to the PCR court as cause to excuse his default (doc. 1 at 5).

In *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012), the United States Supreme Court carved out a "narrow exception" that modified the "unqualified statement in *Coleman* [*v. Thompson*, 501 U.S. 722, 754-55 (1991)] that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." In *Martinez*, the Court

> read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318-19, 1320-21). The Court in *Martinez* also noted:

> When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

132 S. Ct. at 1319.

Here, the petitioner's claim that trial counsel was ineffective in failing to move for a speedy trial has no merit, and therefore it cannot constitute cause to excuse the petitioner's procedural default. The record reflects that a trial was noticed multiple times (app. 15–17). In the motion to dismiss the charges for failure to have the case actually heard at any of the prior times, counsel noted that a speedy trial motion was unnecessary where the case was being continually noticed for trial (app. 28). Further, the trial judge

found that the dockets were particularly crowded with "118,000 pending cases" and that this jurisdiction "had more pending cases per judge than any other state in the country … the dockets are swollen," which presented a problem for both the prosecution and defense (app. 29). Moreover the trial transcript indicates that the trial counsel argued the speedy trial issue and contended that the Solicitor's Office never intended to try the cases at the dates of the trial notices sent (app. 15–17). After introducing the letters, trial counsel argued:

> In response to each one of those letters, my client, Lavar Sanders, has been coming up here, term after term, and has sat in the courtroom on many occasions. And so to further our motion, Your Honor, I would like to admit several trial docket lists I have received. But at this time I would like to call my client for his testimony in support of this motion put on to the Court the prejudice he has suffered as a result of being required to sit in court term after term awaiting this matter to come forward for trial.
>
> And what I would say, Your Honor, is when the solicitor sends out one of these letters, that requires us to get ready for trial. Put him on notice that at any time our case could be called. So this man was sitting on pins and needles ever since these letters have begun to come out.
>
> I would especially point out to the Court that I don't believe they had any intention of calling this man's case for trial during any of those terms prior to today's date. And at the last minute they handed the case off to Mr. Spratlin; and, Your Honor, it's just not fair. I'd like to continue to put on evidence in support of this motion. Okay.

(App. 17–18).

The petitioner testified on the speedy trial issue before the trial judge *in camera* (app. 18–26). After the petitioner testified *in camera*, Assistant Solicitor Spratlin conceded that the petitioner that been at the trial court eleven times waiting for his case to be called, but contended that the actions of the Solicitor's Office did not constitute

10

prosecutorial misconduct (app. 26–28). The trial judge denied trial counsel's speedy trial motion (app. 29).

The trial court declined to dismiss the charges finding no prosecutorial misconduct in the matter (app. 29). The United States Supreme Court, acknowledging that each case turns on its own facts, provided the following guidance:

> A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

*Barker v. Wingo*, 407 U.S. 514, 530 (1972) (four-part "speedy trial" test: (1) the length of the delay; (2) the reason the government uses to explain the delay; (3) when and how the defendant asserted his or her speedy trial right; (4) and the prejudice to the defendant). Under *Barker*, not only should the delay be considered, but also that the reasons for the delay should be examined as to relative justification:

> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker v. Wingo*, 407 U.S. at 531.

The trial judge in this case reasonably found the reason for the delay was the crowded docket—a reason *Barker* points out should be weighed less heavily against the prosecution. Nevertheless, there is no indication of prejudice to the petitioner's right to a

fair trial. There appears to be no loss of testimony or evidence in the record resulting from the delay. There is nothing to indicate that the petitioner would have been able to show both deficient performance and prejudice.

Moreover, the Sixth Amendment's "speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States v. MacDonald*, 456 U.S. 1, 8-9 (1982). The petitioner was not prejudiced because he was out "on bond" prior to his trial (app. 27–28). The petitioner was indicted by Sumter County Grand Jury on October 26, 2006 (app. 265) and was tried on March 4, 2009 (app. 5). This period is approximately two years and four months. This court has held that a four-year delay between indictment and trial is not unreasonable or presumptively prejudicial if the particular defendant was out on bond. *See Snipes v. Reynolds*, Civil Action 0:07-3516-CMC-MAGCIV, 2008 WL 4457895, at *15 (D.S.C. Sept. 25, 2008) ("In the case at bar, while there was more than a four-year delay between Petitioner's June 15, 2000[,] indictment and his August 2004 trial, this delay cannot be said to be such an unreasonable length so as to be presumptively prejudicial."), *appeal dismissed*, No. 08-8195, 326 F. App'x 696 (4th Cir. June 18, 2009) (citing *Barker*, 407 U.S. 514 (finding no speedy trial violation with respect to a five-year delay). Notwithstanding the procedural default of this issue, the state court transcript shows no ineffectiveness by trial counsel or a violation of the Sixth Amendment right to a speedy trial.[3]

---

[3]The federal Speedy Trial Act, 18 U.S.C. § 3116 *et seq.*, applies to criminal prosecutions brought by the United States and is not applicable to prosecutions by a State. *See Plummer v. Myers*, Civil Action No. 8:10-0845-TLW-BHH, 2010 WL 2026684, at *3 (D.S.C. Apr. 12, 2010) (collecting cases), *adopted by* 2010 WL 2026669 (D.S.C. May 20, 2010).

***Merits***

The petitioner raised the first claim (failure to investigate) in his one ground for relief in his first PCR application and at PCR appeal (app. 220; doc. 19-7 at 3). Therefore, this claim for relief has been preserved for federal merits review in this habeas action.

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling

13

> decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir. 1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257–58 (4th Cir. 1999).

### *Ineffective Assistance of Counsel*

To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

The petitioner alleges that trial counsel was ineffective for failing to investigate (doc. 1 at 5). The petitioner complained in the PCR action that counsel was not prepared for trial. The petitioner testified at the PCR hearing that the park used for the proximity charge was 1.7 miles from the crime and counsel should have had discovered that fact (app. 236–37). He also alleged there were other people on the scene that counsel should have identified (app. 238). He further testified that counsel should have gone to the scene to investigate the lighting and the probability of the officer actually seeing the petitioner drop the package on the ground (app. 238). Lastly, the petitioner complained that counsel should have obtained the dispatch tapes referencing "shots fired" because the petitioner was "walking through the apartment complex" and "heard no shots , , ," (app. 239). At the PCR hearing, the petitioner admitted on cross-examination that he had spoken to counsel many times, "Definitely more than twenty," and admitted going over discovery with counsel (app. 242).

Trial counsel testified at the PCR action that the petitioner remained very vague in his information about other possible witnesses and that the petitioner's vagueness hampered investigation (app. 248–49). Trial counsel testified:

> I was appointed on November 8, 2006 to represent Mr. Sanders on multiple offenses, and on more than one Indictment. Originally, he was being prosecuted by Ms. Catherine Fant. I

15

> requested from the state and served Rule 5 and Brady Motions on the state. I also requested a preliminary hearing. I met with Mr. Sanders, as he said, many times in the Public Defender's Office. We went over the discovery several different times. The Motion for the Dismissal at the onset of the case, was because they had placed the case on the trial list so many different times that it was almost impossible to tell if they were actually going to try him or not. I felt that it rose to the level of prosecutorial misconduct, to require him to come and sit in court over and over again. So, we did have many opportunities to discuss his case. And, I will say, he always came to court when he was suppose to. He did pretty much what I asked him to do. He was a very cooperative client. And, I had no difficulty getting along with Lavar. But, I don't see where I could have done anything more than I did to try to represent him.

(App. 251).

The PCR judge found counsel's testimony credible and the petitioner's testimony in these regards not credible (app. 262). In particular, the PCR judge found:

> After careful review based on the [*Strickland*] standard discussed above, the Applicant has failed to carry his burden in this action. Specifically, this Court finds that Counsel's testimony is credible while the Applicant's testimony is not credible. This Court finds that the extensive trial record, along with Counsel's credible testimony, reveals the proficient competency of counsel. Applicant alleges that Counsel should have investigated and subpoenaed additional witnesses, obtained a copy of the 911 tape, and overall prepared and investigated more for Applicant's trial. However, Counsel testified that his ability to investigate Applicant's case was significantly hampered by Applicant's complete inability to provide him with any credible information. Applicant failed to produce any witnesses or evidence to show what additional information might have been gleaned from additional investigation. "Failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to the result." *Moorehead v. State*, 329 S.C. 329, 496 S.E.2d 415 (1998). This Court finds that the Applicant's attorney demonstrated a normal degree of skill, knowledge and professional judgment that is expected of an attorney who practices criminal law. Therefore, this Court finds this application must be denied and dismissed with prejudice.

(App. 262–63).

16

The PCR judge's credibility ruling is a factual finding subject to deference. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1) ("for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear)). *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them"). The petitioner may overcome this presumption of correctness only by showing "clear and convincing evidence to the contrary." *Wilson v. Ozmint,* 352 F.3d 847, 858-859 (4th Cir. 2003) (quoting *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003)) (internal citations omitted). The petitioner has shown no cause to discount this finding, and none is readily apparent.

The state PCR court reasonably applied the mandates of *Strickland v. Washington* in making its assessment that counsel was not deficient in his pre-trial preparation or trial representation. The PCR judge noted that the petitioner again failed to produce any witnesses for the PCR proceedings (app. 262). The petitioner's failure to do so at the PCR hearing supports trial counsel's testimony that his investigation efforts were hampered by the petitioner. At any rate, trial counsel engaged in discovery with the State and prepared for trial. Moreover, the evidence, as noted above, supported the finding of guilt. The petitioner, who admitted he was at the scene, was seen discarding the drugs and was later found with digital scales on his person (app. 239).

Furthermore, there was no showing of prejudice. "[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland*, 466 U.S. at 696. The petitioner demonstrated no additional evidence or witness testimony that was missed, much less evidence that would have made a difference in light of the testimony identifying the petitioner as the individual who dropped the drugs, the drug testing confirming substance and weight, and the digital scale found on the petitioner's person.

Thus, the PCR court's order reflects both a reasonable determination of facts and a reasonable application of the *Strickland* standard, and the petitioner is not entitled to relief on this claim.

The PCR judge's factual findings are supported by the record and are not objectively unreasonable. *See* 28 U.S.C. § 2254(d)(2).[4] Secondly, the PCR court's rejection of this claim was not contrary to United States Supreme Court precedent. *See Parker v. Matthews*, 183 L.Ed.2d 32, 132 S.Ct. 2148, 2155–56 (2012) (in a habeas proceeding, United States Supreme Court precedent, not circuit precedent, constitutes clearly established federal law).

Since the PCR court's decision does not show an unreasonable application of the performance or prejudice prongs of the *Strickland* test, the petitioner is not entitled to an evidentiary hearing. *See Cullen v. Pinholster*, 563 U.S. 170, 179 L.Ed.2d 557, 131 S.Ct. 1388, 1399–1401 (2011); and *Schriro v. Landrigan*, 550 U.S. 465, 475 (2007) ("If district courts were required to allow federal habeas applicants to develop even the most insubstantial factual allegations in evidentiary hearings, district courts would be forced to reopen factual disputes that were conclusively resolved in the state courts.").

---

[4]Under § 2254(d)(2), this court may not grant relief based upon the state PCR judge's factual findings unless those findings are objectively unreasonable. Further, the PCR judge's findings are entitled to a presumption of correctness, which the petitioner must rebut by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The petitioner cannot meet his burden.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 18) be granted and that the petitioner's motion for evidentiary hearing (doc. 27) be denied. It is also recommended that the District Court deny a certificate of appealability. The attention of the parties is directed to the Notice on the next page.

                                                  s/ Kevin F. McDonald
                                                  United States Magistrate Judge

November 16, 2015
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court
United States District Court
300 East Washington Street — Room 239
Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).